UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RHODORA CRISTOBAL,

　　　　　Plaintiff,

　　v.

EQUIFAX, INC., et al.,

　　　　　Defendants.

Case No.16-cv-06329-JST

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

ECF Nos. 23, 27

Before the Court are Defendant Equifax, Inc. ("Equifax") and Defendant Chase Bank USA, N.A.'s ("Chase") (erroneously sued as JP Morgan Chase Bank) Motions to Dismiss. ECF Nos. 23, 27. The Court will deny the motions in part and grant them in part.

## I.　　BACKGROUND

For the purpose of deciding this motion, the Court accepts as true the following allegations from Plaintiff's Complaint, ECF No. 1. See Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

Plaintiff Rhodora Cristobal filed this lawsuit against Equifax Chase in November 2016.[1] ECF No. 1. Equifax is a consumer reporting agency ("CRA") that collects and disseminates financial information from banks and other sources about consumers, to be used, among other purposes, for evaluation of a consumer's creditworthiness.[2] See id. ¶¶ 26-27. Cristobal alleges

---

[1] Chase has requested that the Court take judicial notice of six documents related to Plaintiff Cristobal's Chapter 13 bankruptcy. ECF No. 24. Because a court may properly take judicial notice of matters of public record, Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001), the Court grants Chase's request.

[2] Under the Fair Credit Reporting Act ("FCRA"), a "consumer reporting agency" is "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing

United States District Court
Northern District of California

that Defendants violated the Fair Credit Reporting Act ("FCRA") and the California Consumer

Credit Reporting Agencies Act ("CCRAA") by committing unfair and deceptive practices in

connection with their "inaccurate, misleading, or incomplete" reporting of Plaintiff's debt and

Chapter 13 bankruptcy.

Cristobal's suit is based on how her Chapter 13 bankruptcy appeared—or rather, did not

appear—on her credit report. Cristobal filed for Chapter 13 bankruptcy protection on September

28, 2012. Id. ¶ 87. Chapter 13 allows a debtor to create a voluntary repayment plan

commensurate with the debtor's ability to repay some portion of her debt. ECF No. 1 ¶ 89. After

a bankruptcy court confirms the terms of a Chapter 13 plan, the confirmed plan becomes final with

respect to the debtor's rights and liabilities. ECF No. 1 ¶ 95. Cristobal's bankruptcy plan was

confirmed on February 26, 2013. Id. ¶ 94.

Cristobal's objective in filing for bankruptcy was, in part, to "repair" her creditworthiness

and credit score. Id. ¶ 87. To measure her progress, she pulled a credit report, which drew

information directly from the three major CRAs, including Equifax, on April 1, 2016. See id. ¶

105. At that time, she noticed that two different trade lines[3] reported information that "did not

comport with credit reporting industry standards" because they reported "past due balances,

inaccurate balances, and/or late payments." Id. ¶ 106. In response, she disputed the trade lines

with Equifax, among other CRAs. Id. ¶ 107. Her "dispute letter specifically put each Creditor on

notice that Plaintiff had filed for bankruptcy and the account was not reporting the bankruptcy

accurately . . . ." Id. ¶ 108. About half a year later, on September 9, 2016, she pulled a second

report to "ensure [her] accounts had been updated." Id. ¶ 110. Plaintiff found that Chase was

still reporting her account with similar errors; it continued to list Cristobal as having made late

payments, failed to list "the correct CII D indicator," and failed to note that the account had been

---

consumer reports." 15 U.S.C. § 1681a(f).

[3] The Complaint does not define the term "trade line." The Investopedia website defines "trade line" as "Credit account records that are provided to credit reporting organizations. A trade line, also spelled as tradeline, can include a mortgage, line of credit, credit card, or any other credit-related item that is provided by a financial institution or lender." Investopedia, "Trade Line," http://www.investopedia.com/terms/t/trade-line.asp (visited April 11, 2017).

disputed, among other deficiencies. Id. ¶ 111.

Equifax collects its information from banks, including Chase, and other institutions. To do so, according to the Complaint, Equifax accepts electronic data from data furnishers following the Consumer Data Industry Association's "Metro 2 format." Id. ¶ 42. Metro 2 is an electronic data reporting format. Id. ¶ 38. The credit reporting industry depends on Metro 2 as its standard for accurate credit and debt reporting. Id. ¶¶ 39-40. Under this format, a Code "D" entered in the Metro 2 Consumer Information Indicator ("CII") field indicates that a Chapter 13 bankruptcy petition has been filed and is active, but that no discharge of debts has been entered. Id. ¶¶ 59. Code "D" is seen as "accurately and completely illustrating that the automatic stay of the bankruptcy is preventing ongoing collection activities . . . . thus simultaneously illustrat[ing] to those making credit decisions that payments were NOT made and received but also NOT anticipated." Id. ¶ 77. In contrast, leaving the CII field blank or with an incorrect code "makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process" and suggests that "creditors are free to collect" on the debts. Id. ¶¶ 64-65. Plaintiff's bankruptcy plan was confirmed on February 22, 2013, meaning that the CII field on her credit report should have indicated a Code "D" under the Metro 2 format.

According to the Complaint, Equifax is "readily familiar" with and "accept[s]" the Consumer Data Industry Association's Metro 2 format for credit reporting. Id. ¶¶ 42, 130. Thus, as applied to the information appearing on Cristobal's credit reports, Cristobal alleges that Defendants would have known that "failure to report a CII [code] did not comport" with the industry standard of reporting the Metro 2 indicator "D." See id. ¶ 137. This is important because "[w]hen FICO calculates credit scores[,] the algorithms use Metro 2 information based on industry standards . . . ." Id. ¶ 47. Therefore, "[f]ailure to reference the bankruptcy filing (CII field) and or the correct petition date shall result in a lower FICO Score resulting in those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness. Id. ¶ 48. If the consumer's credit score is lower, those making credit decisions will consider her to be a "higher credit risk" and offer "less favorable lending terms." Id. ¶ 49.

Equifax and Chase now move to dismiss. ECF Nos. 23, 27. The Court has jurisdiction

under 28 U.S.C. § 1331.

## II.    LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendant is liable for the conduct alleged.  Id.  While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).  "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."  Epstein v. Wash. Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted).

## III.    ANALYSIS

Congress enacted FCRA in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007).  Among other measures, FCRA imposes a duty on credit reporting agencies to reinvestigate information that a consumer disputes, and delete or modify information that the reinvestigation finds to be inaccurate.  15 U.S.C. § 1681i(a).

To state a reasonable reinvestigation claim under section 1681i(a), a plaintiff must allege that:  "(1) her credit files contained inaccurate or incomplete information; (2) she directly notified Defendant of the inaccuracy; (3) the dispute is not frivolous or irrelevant; (4) Defendant failed to respond to the dispute; and (5) Defendant's failure to reinvestigate caused Plaintiff to suffer actual damages."  Taylor v. First Advantage Background Servs. Corp, No. 15-CV-02929-DMR, 2016 WL 4762268, at *5 (N.D. Cal. Sept. 13, 2016) (formatting and gendered pronouns altered).

Equifax makes three arguments in support of its motion to dismiss.  First, it argues that Cristobal has not pleaded the existence of an actionable inaccuracy in the credit reports.  ECF No. 27 at 10.  Second, Equifax claims it is not capable of determining the legal status of Cristobal's debt with her creditors.  Id. at 12.  Finally, it argues that Cristobal failed to plead willfulness or negligence.  Id. at 14.

Chase also offers three arguments in support of its motions to dismiss. First, like Equifax, it argues there was no FCRA or CCRAA violation because the credit reports did not contain any factual or legal inaccuracy. ECF No. 23 at 12. Second, it contends that Plaintiff has not adequately pleaded recoverable statutory or actual damages. Id. at 17, 20. Third, it argues that Plaintiff is judicially estopped from bringing these claims because she did not report the claims to the bankruptcy court. Id. at 23.

### A.     Existence of an Actionable Inaccuracy

To state a claim under FCRA's reinvestigation provision, 15 U.S.C. § 1681i, a plaintiff must make a "prima facie showing of inaccurate reporting" in her credit report. See Carvalho v. Equifax, 629 F.3d 876, 893 (9th Cir. 2010) (quoting Dennis v BEH-1, LLC, 520 F.3d 1066, 1069 (9th Cir. 2008)). Information on a credit report can be inaccurate under FCRA "because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009).

### 1.     Inaccuracy by Reporting Actual Debt

Courts in this district have uniformly rejected the theory that it is inaccurate to report a plaintiff's actual debt instead of the amount owed under her confirmed Chapter 13 repayment plan. That is because the higher amount is not discharged until the debtor has made the payments required under the plan. See, e.g., Blakeney v. Experian Info. Solutions, Inc., No. 15-cv-5544-LHK, 2016 WL 4270244, at *6 (N.D. Cal. Aug. 15, 2016) ("Confirmation of Plaintiff's Chapter 13 bankruptcy plan is not equivalent to discharge of Plaintiff's debts, and Plaintiff is not entitled to receive a discharge of debts . . . until Plaintiff has completed all payments provided for under the Chapter 13 bankruptcy plan."). Under Plaintiff's theory, Defendants violated FCRA because "the amounts that were being reported were materially different than what had been paid to Defendant under the terms of her confirmed chapter 13 plan," and because the reports did not reflect how the Chapter 13 bankruptcy court determined Plaintiff's "debt is to be treated." ECF No. 35 at 7-8. Neither caselaw nor basic notions of contract law support this theory, however: although creditors are barred by the bankruptcy code from taking action to collect on the debts that are subject to the

5

plan, the debts themselves exist until discharged.  The Court therefore declines to read FCRA as

Plaintiff suggests and dismisses Plaintiff's claims that Defendants violated FCRA by reporting

post-confirmation, pre-discharge debts.[4]

## 2. Metro 2 Theory of Inaccuracy

Cristobal also argues that Defendants failed to follow the Metro 2 electronic data reporting

format, which is the industry standard, and that failing to follow this standard is sufficiently

misleading to those making credit decisions to support her FCRA claim.  See ECF No. 1 ¶ 49.

Cristobal alleges that according to the Metro 2 format, confirmation of a Chapter 13 bankruptcy

plan should have triggered a Code "D" to appear in the CII field of the credit report, ECF No. 1 ¶

59, and that failure to report the proper code causes "those making credit decisions to draw a more

negative inference regarding a consumer's credit worthiness."  Id. ¶ 71.  Cristobal further alleges

that Equifax would have known that "failure to report a CII given that a Chapter 13 [bankruptcy

petition] was filed did not comport with industry standards."  Id. ¶ 133.

Nissou-Rabban v. Capital One Bank (USA), N.A. supports Plaintiff's argument that

omission of Code "D" rendered her report misleading.  No. 15-cv-1675-JLS-DHB, 2016 WL

4508241, at *5 (S.D. Cal. June 6, 2016)).  In that case, the plaintiff alleged that the defendant

Synchrony Bank failed to report the proper Metro 2 code when it furnished account information to

a CRA, and that this failure to adhere to the Metro 2 format might have prompted those making

credit decisions to draw a more negative inference about her creditworthiness.  Id. at *5.  The

court held that the plaintiff sufficiently alleged an inaccuracy based in part on the defendant's

noncompliance with industry-standard Metro 2 reporting guidelines.  Id.  The court distinguished

the plaintiff's situation from that of plaintiffs in past decisions that seemed to reject the Metro 2

theory of inaccuracy.  E.g., Giovanni v. Bank of Am., N.A., No. 12-cv-2530-LB, 2013 WL

1663335, at *6 (N.D. Cal. Apr. 17, 2013); Mortimer v. Bank of Am., N.A., No. 12-cv-1959-JCS,

---

[4] The Court similarly agrees that Equifax is not capable or required to "resolv[e] a legal dispute between Plaintiff and her creditors" about the confirmation plan's effect on the legal status of her debt.  ECF No. 27 at 7.  The law does not require the CRAs to act as a tribunal or "'scour' a bankruptcy file and make judgments about which debts are included."  Id. at 14 (quoting Hupfauer v. Citibank, N.A., No. 16 C 475, 2016 U.S. Dist. LEXIS 112227, at *22-23 (N.D. Ill. Aug. 19, 2016)).

6

2013 WL 1501452, at *12 (N.D. Cal. Apr. 10, 2013). While the plaintiffs in those cases had failed to plead that deviation from Metro 2 would mislead those making credit decisions, the plaintiff in Nissou-Rabban had alleged that "those making credit decisions, who would expect that the furnisher adheres to the Metro 2 format, might view a 'charge off' notation more negatively than 'no data.'" Nissou-Rabban, 2016 WL 4508241, at *4. The court cautioned that deviation from Metro 2 does not per se violate FCRA, and that the plaintiff in that case would likely need to establish through admissible evidence that Metro 2 "is in fact the industry standard, that Synchrony deviated from it, and that this particular deviation might adversely affect credit decisions—in other words, that entities would have expected Defendant to report in compliance with the [Metro 2] guidelines." Id. at *5 (internal quotation marks omitted and formatting altered). Thus, under Nissou-Raban, a plaintiff may succeed in stating a claim based on a Metro 2 theory of inaccuracy, so long as she pleads that the particular deviation from the Metro 2 format on her credit report would likely mislead those making credit decisions.[5]

The Court acknowledges that other courts in this district have interpreted Nissou-Raban narrowly and then rejected FCRA claims premised on Metro 2 errors or omissions. See Connors v. Experian Info. Sols., Inc., No. 16-CV-04663-LHK, 2017 WL 168493 (N.D. Cal. Jan. 17, 2017); Keller v. Experian Info. Sols., Inc., No. 16-CV-04643-LHK, 2017 WL 130285 (N.D. Cal. Jan. 13, 2017); Devincenzi v. Experian Info. Sols., Inc., No. 16-CV-04628-LHK, 2017 WL 86131 (N.D. Cal. Jan. 10, 2017); Mestayer v. Experian Info. Sols., Inc, No. 15-CV-03645-EMC, 2016 WL 7188015 (N.D. Cal. Dec. 12, 2016). For example, in Mestayer, the court found that, although the plaintiff adequately alleged that "the Metro 2 format is the credit industry's standard," the complaint was devoid of "specific allegations as to how [the] failure to follow Metro 2 would be misleading when the fact of her bankruptcy was reported" elsewhere on the credit report. Id. at *3. The Mestayer decision distinguished Nissou-Rabban because there was "no indication that the

---

[5] The plaintiff in Nissou-Rabban brought a data furnisher investigation claim, which is slightly different from the CRA reinvestigation claim Cristobal brings here. Compare 15 U.S.C. § 1681s, with 15 U.S.C. § 1681i. But the Ninth Circuit has interpreted the "inaccuracy" element consistently under both subsections, and uses the same standard to determine whether an inaccuracy existed. See Carvalho, 615 F.3d at 1230 (naming the proper standard as whether the information is "patently incorrect or materially misleading").

credit report at issue in <u>Nissou-Rabban</u> reported a bankruptcy." <u>Id.</u> In other words, the court concluded that the failure to use the D code could not plausibly be misleading where a credit report already disclosed the fact of the bankruptcy.

Cristobal's complaint is somewhat ambiguous but, construed in her favor, it alleges that her credit report did not disclose the fact of her bankruptcy. ECF No. 1 ¶ 108 (alleging that "the account" of "each Creditor . . . was not reporting the bankruptcy accurately *or worse not at all*") (emphasis added). At the April 13, 2017 hearing on the motion to dismiss, however, Plaintiff's counsel conceded that Cristobal's bankruptcy *did* appear on the face of her credit report. Thus, the Court could follow <u>Mestayer</u>'s lead in distinguishing Cristobal's complaint from <u>Nissou-Rabban</u> on that basis. But, given the other allegations in Cristobal's complaint, the Court concludes that the appearance of "bankruptcy" elsewhere on Plaintiff's credit report is not fatal to her FCRA claims.

Under Cristobal's theory, her credit report deviated from Metro 2 because the CII field was left blank when it should have been filled with code "D." ECF No. 1 ¶¶ 84, 137. That deviation "will prompt those making credit decisions to draw a more negative inference regarding [her] creditworthiness," <u>id.</u> ¶¶ 64-66, and could lower her credit score because FICO's "algorithms" are premised on compliant Metro 2 data, <u>id.</u> ¶¶ 47-49. In a world of big data, it is plausible that an algorithm designed to calculate Cristobal's FICO score based on the Metro 2 codes might not generate the same score just because the word "bankruptcy" appears elsewhere on the report. This is particularly true if Metro 2 data reporting is standard industry practice. <u>Id.</u> ¶ 42. In other words, the Court sees no reason why Plaintiff could not ultimately prove that the lack of a D code adversely affected her credit even if her credit report otherwise noted the fact of her bankruptcy.

Of course, as in <u>Nissou-Rabban</u>, Cristobal will eventually need to establish through admissible evidence that Metro 2 format is in fact the industry standard, that the Defendants deviated from it, and that this particular deviation adversely affected credit decisions even where Cristobal's bankruptcy was already noted on her credit report. But that is not her burden at this stage in the pleadings. The Complaint as it stands adequately alleges inaccuracy.

### B. Cristobal Alleges Recoverable Damages

A negligent violation entitles a consumer to actual damages, § 1681o(a), and a willful one entitles the consumer to actual, statutory, and even punitive damages, § 1681n(a). Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 53 (2007). Chase argues that Plaintiff's FCRA claims are deficient because she fails to allege actual or statutory damages, which are essential elements of the claims. ECF No. 23 at 17, 20. Relatedly, Equifax argues that Cristobal failed to plead either a willful or negligent violation of FCRA, but offers no supporting analysis. ECF No. 27 at 14. The Court concludes that Plaintiff has sufficiently alleged only actual damages.

#### 1. Statutory Damages

Willful violations of FCRA trigger the availability of statutory damages. 15 U.S.C. § 1681n(a); Safeco, 551 U.S. at 53. Such violations include those made in reckless disregard of statutory duties. Safeco, 551 U.S. at 56-58. Reckless disregard means acting in disregard of a high risk of violating the law, measured by the clarity of "guidance from the courts of appeals or the Federal Trade Commission" and the statutory text. Id. at 70. But where there is a "dearth of guidance and . . . less-than-pellucid statutory text," an interpretation of the law that is merely erroneous is not objectively unreasonable and thus does not give rise to reckless liability and statutory damages. See id. In Safeco, for example, the defendant's interpretation of "increase" as presupposing prior dealing was erroneous, but before the defendant was sued over its interpretation, "no court of appeals had spoken on the issue, and no authoritative guidance ha[d] yet come from the FTC." Id. Further, the statutory text was "less-than-pellucid" and the defendant's interpretation "ha[d] a foundation in the statutory text," even though it was ultimately wrong. Id. at 69-70. The Supreme Court held that Safeco's reading was "not objectively unreasonable, and so f[ell] well short of raising the unjustifiably high risk of violating the statute necessary for reckless liability." Id. (internal quotation marks omitted).

Cristobal alleges that Defendants' actions were taken "knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to purposefully undermine Plaintiff's ability to reorganize and repair Plaintiff's [credit] score." ECF No. 1 ¶ 18. In the alternative, she alleges their actions were "the result of reckless policies and procedures that

inevitably led to inaccurate, misleading, or incomplete credit reporting." Id. ¶ 19.

The Court finds that Cristobal is not plausibly entitled to statutory damages because she pleads no facts showing that the alleged violations of FCRA were willful or reckless. Further, the law—as it applies to Cristobal's particular theory and allegations—is not clear, which makes Defendants' violation "not objectively unreasonable." See Safeco, 551 U.S. at 69. There is no guidance from the courts of appeals or the FTC indicating that noncompliance with the Metro 2 format is per se unlawful. Although the Metro 2 format may be an accepted industry standard, the statutory language is not "pellucid" about it. The single district court decision that provides a basis for Plaintiff's theory, Nissou-Rabban, was decided June 6, 2016, less than two months before Cristobal disputed the inaccuracy on her credit report. See 2016 WL 4508241; ECF No. 1. ¶ 100. Even that decision states that "persuasive authority suggest[s] that sufficiently pleading a FCRA claim based on failure to follow Metro 2 standards may be difficult." 2016 WL 4508241, at *5. As such, there is insufficient support for Cristobal's allegation that Defendants' violations were willful or reckless.

### 2. Actual Damages

Defendants contend that Cristobal has not alleged sufficient facts to support actual damages, a necessary element of her claim that they negligently violated FCRA. ECF No. 23 at 17. Actual damages are recoverable if they are caused by a negligent violation of FCRA. 15 U.S.C. § 1681o. Cristobal alleges that her actual damages include "inability to properly reorganize under Chapter 13," a variety of prelitigation expenses such as "reviewing credit reports," and "sending demand letters," and a diminished credit score. ECF No. 1 ¶ 145.

First, the Court is not convinced by Plaintiff's vague allegation that she suffered damage from an "inability to properly reorganize under Chapter 13." Plaintiff argues that she paid counsel "several thousand dollars to reorganize and repair [her] credit under Chapter 13," but has not yet "received the benefit of this bargain." ECF No. 35 at 28. Because the Plaintiff's Chapter 13 bankruptcy plan was confirmed, and there is no reason to believe that the disputed credit reports had any effect on the plans or her ability to comply with it, this allegation is not plausible. ECF No. 23 at 18.

10

Similarly, as Cristobal now concedes, her prelitigation costs, such as reviewing credit reports and notifying credit reporting agencies of an inaccuracy, are not recoverable damages under FCRA. ECF No. 35 at 28. Plaintiff attempts to argue, however, that the *second* credit report she pulled to verify that the report had been corrected entitles her to actual damages because "FCRA does not contemplate this expense in the dispute process." ECF No. 35 at 28. The Court rejects this argument. While pulling a second report might have been a good idea, the pulling of the report itself was not a necessary step in repairing Plaintiff's credit or eliminating or mitigating any loss to Plaintiff. The Court therefore declines to characterize Cristobal's prelitigation costs as actual damages.

Finally, Plaintiff argues that Defendants' "inaccurate reporting negatively impacts [her] credit worthiness" and makes her "unable to apply for credit because her score remains extremely low." ECF No. 35 at 28. The Court agrees that this harm is recoverable under FCRA. See Kim v. BMW Fin. Servs. NA, LLC, 142 F. Supp. 3d 935, 945 (C.D. Cal. Oct. 30, 2015); Roybal v. Equifax, No. 05-cv-1207-MCE-KJM, 2008 WL 4532447, at *4-5 (E.D. Cal. Oct. 9, 2008) ("Actual damages may include . . . injury to reputation and creditworthiness."). Chase argues that Plaintiff's diminished credit score does not qualify as actual damages unless she can show that she was denied credit as a result. ECF No. 23 at 19. The Court rejects this argument, given that "no case has held that a denial of credit is a prerequisite to recovery under FCRA." Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995). Chase also argues that Plaintiff's diminished credit score cannot constitute actual damages unless it is shown that the bankruptcy court gave approval for Plaintiff to apply for new credit. ECF No. 23 at 20. For the reasons stated above, this argument is unavailing. If injury to credit worthiness constitutes damage under FCRA regardless of whether the debtor has been denied credit, then it is not relevant whether a bankruptcy court has given permission to apply for credit. The Court therefore finds that Plaintiff has sufficiently pleaded actual damages in the form of a diminished credit score.

**C.     Judicial Estoppel**

"In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure

11

statements." <u>Hamilton v. State Farm Fire & Cas. Co.</u>, 270 F.3d 778, 783 (9th Cir. 2001). A claim will be barred if a party fails to disclose potential claims to the bankruptcy court to be counted as part of the debtor's contingent assets. <u>Id.</u> at 784. Chase alleges that Plaintiff's claims are barred because, despite knowing about these claims for a significant amount of time, Plaintiff never "amended her bankruptcy filings to alert her creditors, including Chase, of this potential claim," but instead continue to "benefit from the bankruptcy court's automatic stay and bankruptcy plan." ECF No. 23 at 23. Plaintiff concedes that the claims brought in these lawsuits are construed as property that should be reported to the bankruptcy court per 11 U.S.C. § 1306(a). ECF No. 35 at 26.

The fact that Plaintiff has not yet disclosed the claims to the bankruptcy court, however, does not mean that she is estopped from bringing them here. While it is true that in a Chapter 13 bankruptcy case the plaintiff has the duty to keep the bankruptcy court informed of potential claims, the claims will not be judicially estopped if the bankruptcy court has not taken any formal action since the plan was confirmed and did not "act in reliance upon Plaintiff's omission of [the] claims." <u>Momoh v. Wells Fargo Bank NA</u>, 2016 U.S. Dist. LEXIS 86276, at *11 (N.D. Cal. July 1, 2016). Here, there is no indication that the bankruptcy court relied on Plaintiff's non-disclosure. <u>See</u> <u>Stewart v. Bank of Am., N.A.</u>, No. 16-CV-05322-JST, 2016 WL 7475613, at *8 (N.D. Cal. Dec. 28, 2016) (rejecting defendant's arguments that plaintiff's claims were judicially estopped for failure to disclose claims to a bankruptcy court in part because the court did not appear to act in reliance on the plaintiff's omission). Nor is there any indication that Plaintiff has "undermine[d] the integrity of the bankruptcy process" or received an unfair advantage by bringing these claims. <u>Hannon v. Wells Fargo Bank, N.A.</u>, No. 14-CV-05381-LHK, 2015 WL 4776305, at *7 (N.D. Cal. Aug. 13, 2015). For these reasons, Plaintiff's claims are not judicially estopped.

### D. California CCRAA Violations

"The CCRAA mirrors provisions of the FCRA." <u>Guimond</u>, 45 F.3d at 1335. Therefore, for the same reasons discussed above, the Court dismisses in part and grants in part Defendants' motions to dismiss Plaintiff's CCRAA claims.

**CONCLUSION**

The Court denies the motions to dismiss as to Cristobal's claims of negligent violations of FCRA and CCRAA, but grants them as to Cristobal's claims of willful violations.

IT IS SO ORDERED.

Dated:  April 26, 2017

JON S. TIGAR
United States District Judge